498 P.2d 175

**John R. ABERNETHY and Barbara Abernethy, husband and wife, Appellants,**

**v.**

**Noel G. SMITH and Jane Doe Smith, husband and wife, et al., Appellees.**

**No. 1 CA–CIV 1778.**

Court of Appeals of Arizona,
Division 1,
Department A.

June 13, 1972.

Rehearing Denied July 12, 1972.

Review Denied Sept. 19, 1972.

John R. Abernethy, in pro. per.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by Robert G. Beshears, Phoenix, for appellees Smith and Brewer.

Snell & Wilmer, by Loren W. Counce, Jr., Phoenix, for appellees Mertz.

CASE, Judge.

Plaintiffs filed suit on 18 November 1970 in the Superior Court of Maricopa County against defendants, all duly licensed physicians, alleging medical malpractice, breach of contract and defendants' wrongful abandonment of plaintiff-husband as a patient. The trial judge granted defendants' motions for summary judgment upon the ground that the suit was barred by the statute of limitations and upon the further ground that plaintiffs were unable to present any competent evidence which would show that any of the defendants had deviated from the standard of practice in the community. It is from this judgment that the appeal herein is taken. The parties will be referred to herein as they appeared in the trial court.

The facts giving rise to this litigation are as follows:

The defendants, Drs. Noel G. Smith and Edward A. Brewer, as partners engaged in the practice of family medicine, provided the plaintiff-husband with complete medical and surgical treatment from 1959 to 6 September 1969. The only additional medical or surgical services rendered him during the above period were performed by Dr. Neil C. Alden and defendant Dr.

George H. Mertz. The defendants do not controvert plaintiffs' allegation that the services of Dr. Alden and Dr. Mertz were recommended and obtained through the initiative of defendants, Drs. Smith and Brewer.

Dr. Smith diagnosed a right inguinal hernia in plaintiff-husband and surgical repair was accomplished on 8 March 1966. The operation was thought to be a success and after a recovery period, he returned to work and carried on his normal activities.

A recurrence of the right inguinal hernia was diagnosed by Dr. Smith on 19 August 1966. He advised the plaintiff that this recurrence was due to weak tissue. On 17 September 1966 plaintiff was readmitted to Good Samaritan Hospital for the hernia repair. The surgery and post-operative care were performed by Dr. Smith with assistance from Dr. Alden. After a period of recuperation, plaintiff again returned to work and normal activities.

In December 1966 Dr. Smith again diagnosed a recurrence of the right inguinal hernia and arranged for an examination of the plaintiff by Dr. Mertz. An examination was conducted and after a consultation, Drs. Mertz and Smith advised plaintiff that a right orchiectomy would have to be performed before the right inguinal hernia could be permanently repaired. As a result of the examination, Dr. Mertz also diagnosed the presence of a left inguinal hernia.

The consent of both plaintiffs was requested before Drs. Mertz and Smith would perform the right orchiectomy and repair of the left and right inguinal hernias. The plaintiffs were fully apprised of the fact that the right orchiectomy might result in permanent sterilization. On 8 January 1967 the plaintiff was again admitted to Good Samaritan Hospital. Repair to the left inguinal hernia was completed the next day and the operation to repair the right inguinal hernia was performed nine days later during a continuous period of hospitalization. Both surgeries were performed by Drs. Smith and Mertz. The right orchiectomy was not performed. Thereafter, following a period of recuperation, the plaintiff was advised that he could again return to normal activities.

An additional recurrence of the right inguinal hernia was diagnosed by Dr. Smith in December 1968. There was no attempt at this time to effect surgical repair. In September 1969, following complaints by plaintiff of continuing pain, an examination was conducted by Drs. Smith and Mertz. The plaintiff was again advised that a right orchiectomy was necessary before repair to the right inguinal hernia could be perfected. No surgical procedures were administered and the record indicates that plaintiff was discharged as a patient by Drs. Smith and Mertz on 6 September 1969.

Thereafter, plaintiff sought and received medical advice from another surgeon who recommended the performance of a right orchiectomy prior to hernia repair. During the same examination, the surgeon diagnosed a diabetic condition. The right orchiectomy and right inguinal hernia repair were performed on 29 October 1969. The record indicates that plaintiff has had no recurrence of right or left inguinal hernia since the October 1969 surgery.

The first question we are confronted with is raised by defendants, Drs. Smith and Brewer. It is their contention that the instant appeal should be dismissed without further consideration. They urge that plaintiffs failed to follow express procedural rules in the processing of this appeal. We do not agree.

The pertinent section of the Arizona Rules of Civil Procedure, Rule 73(s), 16 A.R.S., entitled "Transmitting Record on Appeal", states:

"The record on appeal as provided for in Rules 75 and 76 shall be *transmitted* to the supreme court within forty days from the date of perfecting the appeal, except that, when more than one appeal is taken from the same judgment, the superior court may prescribe the time for transmitting, which in no event shall be

less than forty days from the date of perfecting the first appeal. In all cases the superior court in its discretion and with or without motion or notice may extend the time for transmitting the record on appeal, if its order for extension is made before the expiration of the period for transmitting as originally prescribed or as extended by a previous order, but the superior court shall not extend the time to a day more than ninety days from the date of perfecting the first appeal." (emphasis added)

17 A.R.S., Rules of the Supreme Court, Rule 3(a) (2) states:

"If an enlargement of time is desired under Rules of Civil Procedure, Rule 73(s), appellant shall obtain an order therefor before the expiration of the period originally prescribed or as extended by a previous order, but such extension shall not be to a day more than ninety days from the date of the first notice of appeal."

The abstract of record indicates that the notice of appeal in this case was filed on 2 June 1971 and, thereafter, on 12 July 1971 the trial judge ordered that the plaintiffs be given an extension of time until 15 July 1971 to *transmit* their record on appeal. The order reads as follows:

"It is ordered extending time for filing reporter's transcript and *transmitting* record on appeal to and including July 15, 1971." (emphasis added)

The defendants strongly urge that the plaintiffs were in violation of the trial court's order because the record on appeal was not *filed* until 13 August 1971. The fallacy in defendants' argument is that they use the words "filed" and "transmitted" synonymously and, in addition, make no reference to a letter from the Clerk of the Court of Appeals dated 15 July 1971 which states in part:

"The Record on Appeal was *received* by this office on today, July 15, 1971." (emphasis added)

It is our opinion that the word "transmitted" in Rule 73(s), and the word "transmitting" in the judge's order of 12 July 1971 are not synonymous with the words "filed" or "filing." The record on appeal was transmitted to and received by the Court of Appeals on 15 July 1971, as evidenced by the Clerk's letter of 15 July 1971. It is obvious that the requirements of the law and the judge's order were followed.

The defendants go on to recite authorities for dismissal of appeals where procedures for appeals are not followed. Having decided that the proper procedures were followed by the plaintiffs, we see no reason to discuss the merits of the penalties that might be invoked where the proper procedure is not followed.

The second question presented on appeal is whether the trial court correctly granted the defendants' motions for summary judgment on 29 March 1971.

Two separate issues must be resolved before we can make a determination of the general question. The initial issue simply stated is whether the plaintiffs' action, filed 18 November 1970, is, as a matter of law, barred by the statute of limitations.

At the time plaintiffs commenced the instant litigation, the controlling statute was A.R.S. § 12–542 which states:

"Injury to person; injury when death ensues; injury to property; conversion of property; forcible entry and forcible detainer; two year limitation

"There shall be commenced and prosecuted within two years after the cause of action accrues, and not afterward, the following actions:

"1. For injuries done to the person of another.

"2. For injuries done to the person of another when death ensues from such injuries, which action shall be considered as accruing at the death of the party injured.

"3. For trespass for injury done to the estate or the property of another.

"4. For taking or carrying away the goods and chattels of another.

"5. For detaining the personal property of another and for converting such property to one's own use.

"6. For forcible entry or forcible detainer, which action shall be considered as accruing at the commencement of the forcible entry or detainer."

In applying the law to the case at bar, there must be a determination of when the plaintiffs' cause of action accrued. There has been much controversy over the interpretation of A.R.S. § 12–542 and specifically the definition of "accrues." A most recent interpretation of legislative intent regarding the term "accrues" is set forth in Mayer v. Good Samaritan Hospital, 14 Ariz.App. 248, 482 P.2d 497 (1971). In Mayer, a patient and her husband brought a malpractice action against the hospital, two doctors and their wives in connection with postnatal care which resulted in permanent damage to the plaintiff's pituitary gland. The actual injury to the patient occurred in 1964. After being released from the hospital, the patient continued to feel ill but was unsuccessful in finding the cause of her ailment until 1967 when she underwent a complete series of tests. The test results indicated that the cause of the patient's trouble was damage to her pituitary gland. Six months later, the plaintiff instituted action against her former doctors and hospital. After completion of pre-trial discovery, the defendants made motions to dismiss the action, which motions the trial court treated as motions for summary judgment. The trial court granted summary judgment based on the statute of limitations and the plaintiffs appealed.

The Court of Appeals, after determining that when a cause of action for malpractice "accrues" was an open question, held:

" . . . that a cause of action in a malpractice case accrues when the plaintiff knew or by the exercise of reasonable diligence should have known of the defendants' conduct and therefore the statute of limitations does not begin to run until that time. Yoshizaki v. Hilo Hospital, 50 Haw. 150, 433 P.2d 220

(1967) and cases cited therein." 482 P. 2d at 501.

Defendants argue that the Mayer decision establishes *new* law in Arizona and cannot be applied retroactively to the instant litigation. We do not agree.

In Mayer, we expressly point out that the decision is an interpretation of legislative intent and *not* a creation of a new statute of limitations.

"We have attempted here to ascertain the legislature's intent rather than establish a new statute of limitations by judicial legislation." 482 P.2d at 501.

In support of the Court's holding, we need only look at A.R.S. § 12–542, subsec. B, which as amended states:

"A cause of action for injury or death against a physician or surgeon, dentist, registered nurse, dispensing optician, optometrist, registered physical therapist, podiatrist, licensed psychologist, osteopath, chiropractor, licensed clinical laboratory director, naturopath, or a licensed hospital as the employer of any such person, based upon such person's alleged professional negligence, or for rendering professional services without consent, or for error or omission in such person's practice, shall accrue as of the date of injury and shall be commenced and prosecuted within six years after the date of injury or two years after the injured party discovers or through the use of reasonable diligence should have discovered the malpractice, whichever period first occurs. These time limitations shall be tolled for any period during which such person has failed to disclose any act, error or omission upon which such action is based and which through the use of reasonable diligence should have been known to him."

As is evident, the Legislature adopted the specific language of the Court in Mayer, supra. It is obvious that this Court was correct in its determination that our decision was a valid interpretation of legislative intent.

■ The defendants would have us believe that the Mayer decision is not controlling in the instant litigation, owing to the fact that the petition to review the Mayer case was not denied until 27 April 1971. A reading of the record reveals that Mayer was controlling as of 17 March 1971, and further that the case at bar was not concluded until 29 March 1971. The record also establishes the fact that the trial court in this case was apprised of the Mayer ruling prior to ruling on the summary judgment motions.

Having established that Mayer, supra, is controlling, we need only determine whether the trial court, based on the evidence before it, could, as a matter of law, determine that the plaintiff knew or should have known by the exercise of reasonable diligence that the defendants' action constituted malpractice more than two years prior to the filing of the complaint. The defendants would answer in the affirmative.

■ In support of their conclusion, defendants cited the language used by the trial court in the minute entry of 29 March 1971. It reads in part:

"That plaintiff has not alleged fraud or concealment against any of the defendants and the corrective surgery upon the plaintiff in January, 1967, by Dr. Mertz, either did or should have apprised the plaintiff of any negligent acts of Dr. Smith or Brewer of September or August of 1966. If Dr. Mertz was guilty of malpractice it would have been in January, 1967, and the continued problem suffered by the plaintiff most certainly put him on notice in a reasonable length of time thereafter to claim malpractice. More than three years later is not only late but inequitable."

The defendants then point out that we stated in Mayer:

"However, this point in time [the time at which the injuries manifest themselves] may be important in considering the issue as to whether the plaintiff by the exercise of reasonable diligence

should have known of defendants' negligence." 482 P.2d at 501.

Defendants contend that this language supports the trial court's conclusion. The only conclusion which we reach, in reviewing the language in Mayer, supra, is that the point in time when the plaintiff's injuries became manifest may be important, but is not necessarily the determining factor.

■ After carefully reviewing the facts in a light most favorable to the plaintiffs, we cannot, as a matter of law, find that the plaintiffs knew or by exercise of reasonable diligence should have known of the alleged misconduct of the defendants prior to September 1969. The record indicates only that the plaintiff was in the care of the defendants for a continuous period of time. The fact that corrective surgery and repeated consultations were required does not, in and of itself, show that the plaintiffs failed to exercise reasonable diligence in discovering the alleged negligent acts.

The plaintiffs relied on Drs. Smith and Brewer as family physicians for a number of years and consulted defendant Mertz on Dr. Smith's recommendations. Plaintiffs received continuous assurances from the defendants regarding the treatment given and it is clearly a matter of speculation as to what point in time the plaintiff should have discovered the defendants were negligent in their conduct.

The issue we deem dispositive of this appeal is whether the trial court erred in granting summary judgment on the ground that the plaintiffs presented no evidence to support the allegations of malpractice.

The relevant section of the trial court's minute entry dated 29 March 1971 is set forth as follows:

"The record also shows that the plaintiff has no expert evidence to suggest that any of the defendants deviated from the standard of practice in the community. Medical doctors do not guarantee that their care and treatment will cure the patient. Unfavorable results or unsuccessful surgery is not malpractice, and

the plaintiff's failure to come forward with competent evidence in deviation of the standard of practice defeats his claim without reference to the statute of limitations."

In reviewing the decision of the court, we are compelled to view the facts in the light most favorable to the plaintiffs. The record before the trial court consisted of the complaint, answers, plaintiff's deposition and plaintiff's answers to interrogatories. After careful scrutinization of the record and after hearing oral arguments, the trial judge concluded that the plaintiffs had no expert medical evidence to support their claim. Accordingly, he granted defendants' motions for summary judgment.

The law in Arizona relating to malpractice actions is well established. The Arizona Supreme Court in Boyce v. Brown, 51 Ariz. 416, 77 P.2d 455 (1938), stated:

"The accepted rule is that negligence on the part of a physician or surgeon, by reason of his departure from the proper standard of practice, must be established by expert medical testimony, unless the negligence is so grossly apparent that a layman would have no difficulty in recognizing it. Herzog, Medical Jurisprudence, § 192; Butler v. Rule, 33 Ariz. 460, 265 P. 757; 48 C.J. 1150, and cases cited." (emphasis theirs)

In addition, the Court in Boyce, supra, defines malpractice by holding:

" . . . One licensed to practice medicine is presumed to possess the degree of skill and learning which is possessed by the average member of the medical profession in good standing in the community in which he practices, and to apply that skill and learning, with ordinary and reasonable care, to cases which come to him for treatment. If he does not possess the requisite skill and learning, or if he does not apply it, he is guilty of malpractice. Butler v. Rule, 29 Ariz. 405, 242 P. 436." (emphasis theirs)

The question of whether a physician possesses the requisite skill or fails to apply that skill in any given case is a material question of fact. On motion for summary judgment, in an action founded on alleged malpractice of physician or surgeon, the party opposing the motion must show the existence of this question. In other words, he will be required to offer proof in the record that at the time of trial he will be able to come forward with evidence showing that a doctor lacked requisite skills or that he did not apply those skills. In the instant litigation, the plaintiffs failed in their obligation to offer this proof.

The record clearly shows that the plaintiffs had no expert medical testimony to support their claim of malpractice. The basis for our opinion can be gleaned from the information in plaintiff's answers to the interrogatories and the deposition. It is evident that the plaintiff intended to support his claim with mere opinion and speculation. He offered a list of medical experts who plaintiff hoped would testify and a list of medical texts which would allegedly establish his case. The questions and answers are revealing.

"Q. Have you, your attorneys, agents or investigators received any information from *anyone* that defendant was negligent or failed to exercise requisite skill in attending and treating you?

"A. No.

"Q. The substance of the facts and opinions to which you expect him [the physicians listed as intended witnesses] to testify and a summary of the grounds for each opinion.

"A. Unknown.

"Q. Have these defendants either personally or through an agent, employee or representative admitted the truth of any of the matters [alleged malpractice] set forth in your answers to Interrogatory 520 paragraphs (a), (b) and (c)?

"A. No."

In plaintiff's deposition, when asked:

"Q. Dr. Ramenofsky said to the best of his knowledge there is no evidence of any malpractice?

"A. Right.

"Q. Has any other doctor expressed an opinion to you that there is no evidence of malpractice, except Dr. Ramenofsky and the other two you mentioned?

"A. No.

"Q. Have you talked to any doctor about this matter who expressed an opinion to you that there is evidence of malpractice or anything similar to that?

"A. No."

It is also pertinent that Dr. Ramenofsky was the physician who ultimately performed the right orchiectomy and repair of the right inguinal hernia.

It is obvious that nothing contained in plaintiff's deposition or interrogatories support plaintiff's claim or even give rise to an inference that he could produce supporting evidence at trial. In addition, the plaintiffs' affidavit opposing summary judgment contained no proof that evidence of malpractice would be forthcoming. The trial court had nothing before it except plaintiffs' speculative theories.

█ The plaintiffs cannot rest on the allegations of their complaint when faced with a motion for summary judgment. This Court in Patton v. Paradise Hills Shopping Center, Inc., 4 Ariz.App. 11, 417 P.2d 382 (1966), held:

"Where the motion for summary judgment filed by a defendant points out an absence of facts sufficient to establish a claim for relief, the plaintiff may not rest upon the allegations of the complaint but must come forward with facts which meet the test of the rules sufficient to support that claim for relief."

The listing of duly licensed physicians and medical texts offered by plaintiffs also falls far short of what is required in opposing summary judgment. The Court is asked to speculate as to what evidentiary matter the physicians might testify to. We cannot speculate on what evidence might be produced. The Supreme Court in Stevens v. Anderson, 75 Ariz. 331, 256 P.2d 712 (1953), stated:

"When motion for summary judgment is presented, it becomes the duty of the trial court to examine the entire record and determine whether there is any disputed material fact which if true could have a bearing on the kind of final judgment which under the law should be rendered. If it appears that competent evidence will be submitted tending to prove or disprove such material fact, the determination of the existence thereof must depend upon the evidence submitted at the trial. The court does not try issues of fact, but only whether the same are genuine and in good faith disputed. The mere general statement in a pleading, when attacked by such motion [for summary judgment] supported by proof of specific facts in the form of affidavit or deposition, places on the author of the statement [plaintiff, in the instant case] the obligation to present something which will show that when the date of trial arrives, he will have some proof to support the allegation in the pleading. He cannot withhold this showing until the time of trial. He has not the right to say that he has made a negative or contradictory allegation and has therefore created a genuine issue and might have evidence to support it. * * * To permit such proceeding would defeat the very purpose of summary judgment practice. * * * This practice was established for protection against compelling one to submit to the delay, expense and harassment of litigation upon mere assertions, when it is shown that competent evidence cannot be presented to prove same." 256 P.2d at 713.

The plaintiffs did not meet their obligation.

█ We find no merit in plaintiffs' argument on appeal that the granting of summary judgment was premature and deprived them of further discovery. Plaintiffs had ample opportunity under 16 A.R. S., Rule 56(f) to request a continuance of the summary judgment motions until discovery was completed. There is no indica-

tion in the record that plaintiffs made such a request and, in fact, there seems to be no complaint registered by plaintiffs until the opening brief.

Judgment affirmed.

STEVENS, P. J., and DONOFRIO, J., concur.