**Sylvia FITZPATRICK et vir., Appellants,**

v.

**Julius MARLOWE, Jr., M.D., Appellee.**

**No. 1014.**

Court of Civil Appeals of Texas, Tyler.

June 9, 1977.

Rehearing Denied July 7, 1977.

John D. Wennermark, San Antonio, for appellants.

Peter N. Plumb, Allison & Plumb, San Antonio, for appellee.

DUNAGAN, Chief Justice.

This summary judgment case arose from a medical malpractice suit. This is an appeal from an order granting summary judgment on the ground that plaintiffs' suit was barred by the two-year statute of limitations. Sylvia Fitzpatrick (hereafter referred to individually as "appellant"), joined by her husband, filed this action to recover for the alleged malpractice of defendant-appellee, Julius Marlowe, in treating her for sinus and other nasal problems. Appellee filed his motion for summary judgment alleging therein that appellant's suit was barred by the two-year statute of limitations, Art. 5526, Tex.Rev.Civ.Stat. Ann. At the hearing on the motion for summary judgment appellant sought to establish that appellee had fraudulently induced her to postpone taking action on her cause for malpractice. Appellant's contention was found to be without merit and the motion was granted. Appellants thereafter timely filed this appeal.

Appellants bring forward one point of error asserting that the trial court erred "in not holding that the statute of limitations was tolled by the fraudulent misrepresentations of Defendant until a time within two years before the filing of this suit." The summary judgment evidence in the present case consists of the depositions of appellant and answers of Dr. Tolbert S. Wilkinson to interrogatories with all his written records in connection with treatment and examination of appellant attached to said answers.

The thrust of appellants' lawsuit as reflected in their original petition is predicated upon the alleged negligent conduct of appellee-physician, Dr. Julius Marlowe, Jr., his fraudulent concealment thereof and misrepresentation of the true facts, which conduct allegedly occurred during surgery upon the appellant's nose in January 1972 and March 1973 and in subsequent follow-up treatment of appellant's condition during 1972 and through the latter part of 1973. Appellants alleged in their original petition that:

"Defendant, with intent to deceive Plaintiffs and induce them to refrain from bringing an action against him for malpractice, fraudulently conceal[ed] from Plaintiffs his negligent and careless acts in the course of said operations to Plaintiff's, SYLVIA FITZPATRICK, nose and fraudulently lolled [sic] them into the belief that the condition of her nose was a natural result of the operation and would improve with time and various treatments that he intended to give to Plaintiff, SYLVIA FITZPATRICK. By Defendant's promises and representations to Plaintiffs that such treatment would repair and correct the condition of her nose, induce Plaintiffs to refrain from consulting with or receiving further treatment from other physicians. Defendant's false statements and representations were made with intent that Plaintiffs would rely thereon, to protect Defendant from any demand or claim by Plaintiffs for damages within the time allowed by the statute of limitations. In

truth and in fact, Defendant knew Plaintiff's, SYLVIA FITZPATRICK, true condition at all times since March 2, 1973, and Plaintiffs believed, relied and acted on Defendant's false statements and representations concerning such condition. By Defendant's wrongful conduct and fraudulently concealing from Plaintiffs the nature and extent of Plaintiff's condition caused by Defendants negligence, Plaintiffs, in the exercise of reasonable diligence, did not discover Defendant's fraud until February 1975 when she consulted a plastic surgeon and was advised by such surgeon that her condition was the result of Defendant's negligence and would never improve. . . ."

■ In determining the matter of rendering or affirming a summary judgment in favor of a party, the question on appeal, as well as in the trial court, is not whether the summary judgment proof raises fact issues with reference to the essential elements of a plaintiff's claim or cause of action, but whether the summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corp.,* 450 S.W.2d 827 (Tex.1970); *Harrington v. Young Men's Christian Ass'n of Houston,* 452 S.W.2d 423 (Tex.1970); Rule 166–A(c), T.R.C.P. The burden of proof is upon the party moving for summary judgment and all doubts as to the existence of a genuine issue as to a material fact are resolved against him. *Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965). The evidence upon such a motion must be viewed in the light most favorable to the party opposing the motion. All conflicts in the evidence are disregarded and the evidence which tends to support the position of the party opposing the motion is accepted as true. *Parrott v. Garcia,* 436 S.W.2d 897, 899 (Tex.1969). Thus we shall consider the evidence which supports appellants' cause of action to determine if any genuine fact issue exists.

The summary judgment evidence shows that in September of 1971 appellant went to appellee for treatment of a sinus condition. Appellee performed surgery on appellant to rectify this condition and to remove a small bump from the bridge of her nose. This was done in January of 1972. After the surgery, appellee told appellant the swelling would go down and the bump, which persisted, would go away. In March of 1973, appellee performed a second operation on appellant's nose in an effort to correct the rise, which had never subsided. Now, as a result, instead of a bump, appellant's nose was quite red and depressed in the area where the bump used to be. Appellee again told appellant that this condition would heal. When appellee realized that the dip in appellant's nose would not heal by itself, he told appellant that he would give her cortisone but that, because she was now pregnant, the cortisone treatment would not begin until the termination of the pregnancy. Appellant's child was born in February of 1974, but the cortisone treatments were never begun. Appellant was last treated by appellee in November of 1973. About the time the baby was delivered, appellant began to doubt that the dip would heal.

Appellant saw a Dr. Smith, a plastic surgeon, in the latter part of 1974, who advised her that more corrective surgery would be necessary. Appellant saw Dr. Smith only once. Appellant by her deposition testified that even though Dr. Smith recommended additional surgery to correct the condition "he couldn't guarantee me results because it wasn't a virgin nose, I had already had surgery done on it twice, it wasn't like it was a nose that had never been operated on." The first time she knew she needed corrective surgery was in the latter part of 1974 when Dr. Smith so advised her. In February 1975, appellant saw Dr. Wilkinson who also told her that surgery would be needed because her nose had been "messed up," and that plastic surgery was needed to correct it. Appellants filed this suit on December 10, 1975.

It was about six months after the first surgery in January 1972 before the swelling

subsided to the extent that appellant could see that the bump had not subsided. After the January surgery appellee advised her to put cocoa butter on the affected part of her nose. She did so but to no avail. The bump remained. After the cocoa butter failed to correct the situation, appellee suggested more surgery in which he "would rasp it down." The appellee did perform the second surgery in March 1973. The first time Mrs. Fitzpatrick looked at her nose after the second surgery she "noticed that it was real red across my nose and it was just a big dip in my nose like he had just taken part of my nose away and then it healed a little bit and he said it would take a while for it to heal." Appellant, in her deposition, testified that about July 1973 after the swelling was gone "the dip was there and the bump was still on my nose" and "the redness on it"; that after the second surgery she saw appellee about once a month; and that for the first couple of months appellee would check her nose but did not say much until after "the swelling had gone down and the dip and the redness were still there." Appellant further testified that by that time she was pregnant and that appellee told her he couldn't do anything because she was pregnant, but that after she had the baby he would give her some cortisone. The baby was born in February of 1974 but the cortisone treatments were never begun. She never saw appellee professionally. after the baby was born. She did go to his office for allergy shots which were given by the nurse.

She realized since September 1973 that the dip and redness were there but relied upon appellee's professional advice that an elapse of time and the use of cocoa butter and cortisone shots would correct the condition. It was not until she visited Dr. Smith in the latter part of 1974 and Dr. Wilkinson in February 1975 that she knew the appellee had misrepresented the true facts about her condition caused by his negligence which he was aware of and concealed such facts which induced her to refrain from bringing this cause of action within two years from the time of the surgery performed by the appellee. She was repeated-

ly told by the appellee that her condition would improve, thereby implying to her that it was not permanent.

The chief question here is: At what time did the statute of limitations begin to run?

■■■■ A cause of action based upon actionable fraud accrues when the fraud is discovered or by the exercise of reasonable diligence should have been discovered. *Gaddis v. Smith,* 417 S.W.2d 577, 579 (Tex. 1967). The diligence required in discovering fraud depends upon the relative circumstances and the relationship of the parties for purposes of determining when the statute of limitations begins to run. *Bush v. Stone,* 500 S.W.2d 885, 890 (Tex.Civ.App.— Corpus Christi 1973, writ ref'd n. r. e.); *Allison v. Blewett,* 348 S.W.2d 182, 184 (Tex.Civ.App.—Austin 1961, writ ref'd n. r. e.). The doctor-patient relationship is one of trust and confidence. Because of this relationship appellant could rely on the alleged statements of the appellee until she came into possession of such facts or knowledge as would put an ordinarily prudent person upon inquiry as to its truth, at which time the statute of limitations would begin to run. *Allison v. Blewett,* supra.

We think *Grady v. Faykus,* 530 S.W.2d 151 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n. r. e.) controls the disposition of this appeal. In *Grady,* the plaintiff had a visible redness from x-ray radiation apparent from October 1969. Here, appellant could see the results of the surgery on her nose in March 1973. The plaintiff in *Grady* was examined by another physician in September 1970, eleven months after the results of the radiation became visible, and her treatment by the defendant had terminated. Appellant, here, was treated by appellee until November 1973. She was examined by Dr. Smith in the latter part of 1974, twelve months later. In *Grady,* it was not until the subsequent visit with another physician that the plaintiff realized the true facts concerning her condition. The court in *Grady* held that since plaintiff's original petition, filed in June 1972, was filed within two years after plaintiff claimed she first

learned of the cause of her condition in September 1970, the summary judgment in defendant's favor had to be reversed. Since plaintiff and defendant disagreed on when the plaintiff should have discovered the true facts, the court said a fact issue existed. Because of that fact issue the trial court's summary judgment was reversed and remanded. In *Grady,* the court emphasized that the plaintiff, who was no expert in the x-ray field and who relied on the defendant's statements concerning her condition, could not be expected to know of the legal injury, i. e., excessive radiation.

In the case at bar appellant had no expertise concerning the treatment of her type of injury. She relied on appellee's statements promising future treatment and improvement. She could not be expected to know that appellee's acts had created an injury for which she had a cause of action. This was not made known to her until her visit to Dr. Smith in 1974.

Appellee relies solely on *Nichols v. Smith,* 507 S.W.2d 518 (Tex.1974) in which a patient and her husband brought suit for malpractice against a doctor who allegedly severed her vagus nerve while attempting to repair a hernia. The question there, as here, was whether the two-year statute of limitations applied. Art. 5526, Tex.Rev.Civ. Stat.Ann. The *Nichols* case is distinguishable from the case at bar. In *Nichols,* no fraudulent concealment was found and the court affirmed the summary judgment in favor of defendant because the plaintiff failed to produce any evidence of fraudulent concealment at the summary judgment hearing. The plaintiff relied solely on her pleadings to create a fact issue on this point. The court held that pleadings alone are insufficient to constitute any summary judgment proof. Also the plaintiff in the *Nichols* case admitted that she was advised within three months of the operation that the right vagus nerve had been severed. She knew at that time that the doctor was negligent in severing the nerve. Her cause of action, therefore, arose at that time and her suit filed almost four years later was barred by limitations.

Limitations is not deemed applicable on either of two theories: (1) the discovery rule is applicable to negligent treatment (as opposed to negligent diagnosis); *Robinson v. Weaver,* 550 S.W.2d 18 (Tex.1977) and *Grady v. Faykus,* supra, and (2) the discovery rule is likewise applicable to the plea or count based upon misrepresentation (a species of fraud). In that regard we deem it contrary to the purpose of the limitation statute here involved to permit a defendant to avail himself of the two-year statute when he has affirmatively misrepresented the true facts, thereby preventing the plaintiff from discovering them and then insisting upon a strict application of the limitation period from the occurrence, the total effect of which he has affirmatively misrepresented.

As to the negligent treatment count, what was necessary for plaintiff to discover was not that her nose had a depression in it and redness, but that the depression and redness were caused by the manner the operation was performed and would not heal. On the misrepresentation and fraudulent concealment counts it was necessary for Mrs. Fitzpatrick to discover the misrepresentation itself. Under the evidence, we deem that whether she should have discovered either of those facts sooner is a fact issue for the trier of fact to determine from the evidence.

For the reasons above stated the trial court's judgment is reversed and remanded for a trial on its merits.