**Doris BUSSINEAU, Appellant,**

v.

**PRESIDENT AND DIRECTORS OF GEORGETOWN COLLEGE,**
Appellee.

**No. 84–1318.**

District of Columbia Court of Appeals.

Argued Sept. 19, 1985.
Decided Nov. 26, 1986.

**424**

David S. Greene, with whom Cassandra P. Hicks, Rockville, Md., was on brief, for appellant.

Peter J. Kahn, with whom G. David Fensterheim, Washington, D.C., was on brief, for appellee.

Before NEBEKER, NEWMAN and FERREN, Associate Judges.

NEWMAN, Associate Judge:

To decide this appeal, we must determine when a cause of action "accrues" within the meaning of the statute of limitations in an action where the "discovery rule" applies.[1]

Bussineau sued Georgetown for dental malpractice and breach of warranty. Georgetown sought summary judgment contending the action was time barred. Specifically, it asserted that under the "discovery rule" first announced by us in *Burns v. Bell*, 409 A.2d 614 (D.C.1979), a cause of action accrues when a party has actual or constructive knowledge (1) of injury, and (2) its cause in fact (the cause in fact rule). It contended it was undisputed that Bussineau had knowledge of both the injury and its cause in fact more than three years prior to filing suit. In opposing the motion for summary judgment, Bussineau argued that the discovery rule in the District of Columbia requires active or constructive knowledge (1) of the injury, (2) its cause in fact, and (3) some evidence of wrongdoing (some evidence of wrongdoing rule). She contended that there was a genuine factual dispute on the issue of when she discovered (or by the exercise of reasonable diligence should have discovered) some evidence of wrongdoing. In its Order ruling the action time barred, the trial court agreed with Bussineau that there was a genuine issue of fact about when she knew or should have known of evidence of wrongdoing. However, the court ruled that factual issue was not a "material" one since the court agreed with Georgetown's contention that under the discovery rule, the action accrues under the cause in fact rule. It held the action time barred and granted summary judgment. Bussineau appealed.

1. D.C.Code § 12–301(8) (1981), the applicable portion of the Statute of Limitations, provides a three year period of limitation "from the time the right to maintain the action accrues."

■ We hold that for a cause of action to accrue where the discovery rule is applicable, one must know (or by the exercise of reasonable diligence should know (1) of the injury, (2) its cause in fact and (3) of some evidence of wrongdoing. Since the trial court applied an erroneous legal test, while conceding the existence of genuine issues of material fact under the proper test, we reverse.

I

Since the issue before us is one of law, we set forth only those facts necessary to put the issue in perspective. As a result of an externally caused traumatic injury to her face and mouth, Bussineau sought dental treatment from several dentists. She was ultimately referred to Georgetown Dental School. She was a patient at various portions of the Dental School from the fall of 1978 through October 20, 1980. During this period, dentists at Georgetown performed work on most of her teeth. The work included two root canals, insertion of crowns on a number of teeth, and related work. During the course of her treatment, Bussineau often expressed dissatisfaction with the results; she complained both verbally and in writing. She was regularly reassured that the diagnosis and treatment was proper. She continued to experience pain and difficulty, including mobility of tooth number 8. Further treatment was undertaken to correct the problem. Finally, as a result of letters she wrote to the President of Georgetown and the Dean of the Dental School, the Dean arranged for her to be examined and evaluated by the heads of three departments within the Dental School. This was done. The Dean advised her that all the diagnosis and treatment had been proper; she was told that they could not determine whether her continuing complaints were resultant from the external trauma in 1977 or the slight ocular trauma on tooth number 8. The Dean advised her to consult a private dentist for an occular adjustment.

On July 20, 1980, Bussineau consulted Dr. Shoemaker, a private practitioner in California. He advised her that crowns number 7 through 10 had heavy lingual occlusions; he recommended new crowns. In October 1980, Bussineau returned to Georgetown concerning the occular problem. She was again told that this examination yielded findings consistent with those previously made and communicated to her by Georgetown; she was again advised to see a private practitioner. She consulted Dr. Passantino, a private practitioner in California on July 17, 1981. He advised her that she was suffering from periodontal disease and that there was a problem with her right tempomandibular joint (TMJ). Suit was filed on July 18, 1983, i.e., within three years of her examination by Dr. Shoemaker.

II

■ Under District of Columbia law, an action for negligence must be brought within three years after a cause of action accrues. D.C. Code § 12–301(8) (1981). Generally, a cause of action is said to accrue at the time injury occurs. *Shehyn v. District of Columbia,* 392 A.2d 1008, 1013 (D.C.1978); *Weisberg v. Williams, Connolly & Califano,* 390 A.2d 992, 994 (D.C. 1978). However, in cases where the relationship between the fact of injury and the alleged tortious conduct is obscure when the injury occurs, we apply a "discovery rule" to determine when the statute of limitations commences. *Stager v. Schneider,* 494 A.2d 1307, 1316 (D.C.1985); *Kelton v. District of Columbia,* 413 A.2d 919, 921 (D.C.1980); *Burns v. Bell, supra,* 409 A.2d at 617. *See also Jones v. Rogers Memorial Hospital,* 143 U.S.App.D.C. 51, 442 F.2d 773 (1971); *Baker v. A.H. Robins Company, Inc.,* 613 F.Supp. 994 (D.D.C.1985); *Dawson v. Eli Lilly & Co.,* 543 F.Supp. 1330 (D.D.C.1982); *Grigsby v. Sterling Drug, Inc.,* 428 F.Supp. 242, 243 (D.D.C. 1975), *aff'd,* 177 U.S.App.D.C. 270, 543 F.2d 417 (D.C.Cir.1976), *cert. denied,* 431 U.S. 967, 97 S.Ct. 2925, 53 L.Ed.2d 1063 (1977).

The discovery rule in medical malpractice evolved initially where a foreign object was left in a patient after surgery. The patient would experience pain and discomfort in the operative area thereafter. Further medical attention would eventually result in the discovery and removal of the foreign object. In such a case, the discovery of the object gives the patient not only knowledge of the cause-in-fact of injury, but also screams out "medical malpractice." *See Ayers v. Morgan*, 397 Pa. 282, 154 A.2d 788 (1959). The law is the same in legal malpractice cases. For example, A has an attorney do a title search; the attorney gives a certificate of title which does not include an easement B has on the land. Several years later, A contracts to sell the land to C. The title search discloses the easement. A's cause of action against the attorney is held to accrue when the easement is discovered. *See Hendrickson v. Sears*, 365 Mass. 83, 310 N.E.2d 131, 135 (1974). Again, the injury and cause in fact combine to scream out "malpractice." Put another way, the fact of injury and cause in fact and evidence of breach of duty occur simultaneously. Thus, if A punches B in the face, A knows all he needs to know simultaneously: (1) injury; (2) causes in fact; and (3) breach of legal duty. Most of the courts which have addressed discovery rule issues have been confronted by this type case; the injury and knowledge of cause-in-fact indicates obvious evidence of wrongdoing. The more difficult cases, such as this one, are where the injury and cause-in-fact do not themselves provide evidence of negligence. This is particularly so when the professional reassures the lay client or patient that all is well and that things are proceeding as they should.

This court first adopted a "discovery rule" for negligence cases in *Burns v. Bell, supra,* 409 A.2d at 614. *Burns* involved a negligence action where the plaintiff sought damages for injuries sustained as a result of plastic surgery performed by a defendant-doctor. The facts were these. Bell performed facelift surgery upon Burns in August 1968. After the operation, she noticed what she described as "gross" scarring. Bell reassured her the scars would shrink in time. Thereafter, she experienced numbness and pricking sensations in the surgery area. Bell assured her these too would subside with time. Neither did. In August 1970, Bell performed further plastic surgery on Burns including an attempt to make the scarring from the previous surgery less noticeable. The pain and scarring continued thereafter. Both Bell and his staff told her that she was progressing normally and, that if she'd just be patient, everything would be all right after awhile. In 1974, Burns referred a friend to Bell for facelift surgery. After seeing the results of her friend's facelift, Burns concluded that Bell had "done her wrong"; she filed suit in 1977. The trial court granted summary judgment in favor of the doctor, concluding the statute of limitations had run before the action was instituted.

On appeal, we were required to determine, among other things, precisely when a cause of action accrues under the "discovery rule." Although the language of our holding in *Burns* refers only to the time when a plaintiff has or should have "knowledge of injury," the facts of the case and the analysis engaged in by the court make it clear that we required a finding of more than mere knowledge of injury and cause-in-fact to begin the statute of limitations running on a negligence claim. In applying our holding, we determine that a prospective plaintiff's negligence cause of action did not accrue until the individual "knew or should have known that she had been injured by the alleged negligence" [i.e., wrongdoing] of defendant. *Id.* at 617. Our rationale for requiring some knowledge of an actionable harm or wrongdoing was premised upon the court's concern for lay person plaintiffs who, despite knowledge of the existence of what appears to be an injury and its cause-in-fact, defer legal action and choose to rely on their doctors' reassurances that the manifestations of "injury" are simply part of the normal healing process. *Id.* As we

noted, "[t]o require a patient to scrutinize to a fine degree the advice given by a treating physician, at the risk of losing his right to legal redress seems unwise." *Id.* Thus, in *Burns* we concluded that it was a question of fact for the trier of fact to determine the time a plaintiff initially knew, or should have known in the exercise of due diligence, that the injury was caused by the wrongful conduct of the defendant in order for a cause of action for negligence to accrue. *Id.*

In *Burns,* we cited with approval *Fitzpatrick v. Marlowe,* 553 S.W.2d 190 (Tex. Civ.App.1977). We analyzed the facts and quoted the decision. We said:

> In *Fitzpatrick v. Marlowe,* 553 S.W.2d 190 (Tex.Civ.App.1977), a woman appealed from the trial court's order granting summary judgment. She had gone to a physician for treatment of a sinus condition in September 1971. He operated on her and removed a small bump from her nose in January 1972. After the operation, her nose swelled and the bump remained. Marlowe repeatedly assured her that her condition would improve but it did not. In March 1973, the doctor performed a second operation to correct the first. After this operation, appellant had a dip in her nose instead of a bump. Once again she was assured that her condition would improve in time.

> In late 1974, she went to see a plastic surgeon who advised her that she would need corrective surgery. In February 1975, she consulted still another physician who advised her that her nose had been "messed up." Shortly thereafter, appellant filed an action against the original doctor who prevailed at the trial level upon a motion for summary judgment in which he claimed that the statute of limitations had run.

> The Court of Civil Appeals of Texas, applying the discovery rule, reversed.

> In the case at bar, appellant had no expertise concerning the treatment of her type of injury. She relied on appellee's statements promising future treatment and improvement. She could not be expected to know that appellee's act had created an injury in which she had a cause of action. This was not made known to her until her visit to [the doctor] in 1974.... Under the evidence, we deem that whether she should have discovered [her injury] is a fact issue for the trier of fact to determine from the evidence. [*Id.* at 195.]

*Burns v. Bell, supra,* 409 A.2d at 617–18. As the language of the court in *Fitzpatrick* makes clear, more than knowledge of injury and cause in fact must be present; the cause of action did not accrue until the patient knew or should have known of some evidence of wrongdoing. The Texas court said that this occurred when she was advised in 1974 of the need for corrective surgery.

Since *Burns,* this court has acknowledged that the discovery rule requires knowledge of some wrongdoing in several cases. In *Kelton v. District of Columbia, supra,* we interpreted a notice statute which required parties intending to sue the District of Columbia for negligence to notify the District of such intent within six months after the injury was sustained. *Id.* at 920–21 & n. 2. The Keltons attempted to sue the District as the result of injuries sustained from an alleged non-consensual tubal ligation performed on Mrs. Kelton during a Caesarean section delivery. We applied the discovery rule of *Burns v. Bell, supra,* 409 A.2d at 617, to determine when the cause of action accrued; we concluded that the suit was barred because, for a time longer than the statutory period, she was on "inquiry notice that she might have suffered an actionable injury." *Kelton, supra,* 413 A.2d at 921. The court held that the statute began to run at the time plaintiff was told that surgery had resulted in scars on the fallopian tubes indicating that either a deliberate tubal ligation or surgical trauma might have occurred at some point in the past. Thus, in *Kelton,* we reiterated our interpretation of the discovery rule, noting that the statute of limi-

tation for negligence begins to run at such time a prospective plaintiff gains inquiry notice that wrongdoing may be involved.[2]

We have also required "knowledge of wrongdoing" to commence the statute of limitation in negligence cases beyond the medical malpractice context. In *Ehrenhaft v. Malcolm Price, Inc.*, 483 A.2d 1192, 1202 (D.C.1984), we applied the discovery rule to an action based on tort and contract claims arising out of the allegedly deficient design and construction of an addition to a house. Focusing upon the plaintiff's reliance on special skills or knowledge of the defendants who did the work to inform him of the injury or damage, this court observed that a lay person is "most likely without the requisite knowledge to determine whether the room [in his house] has been properly designed or constructed." *Id.* at 1202. The court reasoned that "surely it is inconsistent with our notions of justice to interpret 'accrual' of a cause of action to occur prior to a point in time at which a person would reasonably have knowledge of any wrongdoing." *Id.* (emphasis added).

Although a different type of reliance is involved in a product liability case, the rationale underlying the discovery rule is no less apt and necessarily involves more than knowledge of the injury and its cause. The analysis in *Dawson v. Eli Lilly & Co., supra,* 543 F.Supp. at 1334, 1339, is instructive.

In a product liability case where the District of Columbia statute of limitations controlled, a daughter of a woman who took diethylstilbestrol (DES) during her pregnancy, sued the manufacturer alleging that the DES had caused her injury. The defendants' asserted the statute of limitations as a bar. The manufacturer contended that under the law of the District of Columbia, the cause in fact rule applied and barred the claims. Dawson contended that the law of the District of Columbia was the some evidence of wrongdoing rule. In resolving this issue, the District Court concluded that this court had not spoken with clarity or preciseness on the question presented. Thus, the court analyzed our previous decisions, particularly *Burns v. Bell,* compared them with decisions in states having the "discovery rule" and the rationale therefor. The court concluded that the "some evidence of wrongdoing" rule was the law of the District of Columbia. It concluded that a genuine issue of fact existed as to when Dawson had or should have had knowledge of some evidence of wrongdoing. *Id.* at 1338–39.

While we agree with Judge Joyce Hens Green in *Dawson* that our language in *Burns* and subsequent cases may not have parsed the issue with clarity and precision, we also agree with her conclusion that our holding and results in *Burns,* given the facts as recited *supra,* cannot be explained other than under the "some evidence of wrongdoing rule." *See also Ehrenhaft v. Malcolm Price, Inc., supra.*

In addition to contending we have already adopted the cause in fact rule, Georgetown argues in the alternative that if the question is still an open one in the District of Columbia, we should follow *United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). We decline to do so. By so declining, we find ourselves in the company of every state which has considered the discovery rule as applied to facts such as those here or in *Kubrick.* Those states have all required either knowledge of some evidence of wrongdoing or, in some, knowledge of even more; *e.g.,* knowledge of all the elements of a cause of action, before the limitation period begins to run. In part II (A), we turn to *Kubrick.* In part II (B), we turn to the state court opinions both before and after *Kubrick* which reject the "cause in fact" rule.

## II (A)

*Kubrick* involved a medical malpractice claim asserted under the Federal Tort

---

**2.** *See also Stager v. Schneider,* 494 A.2d 1307 (D.C.1985) (cause of action accrues under the discovery rule when *wrongful* conduct and injury known or knowable).

Claims Act (FTCA), 28 U.S.C. § 2401(b). The Act proscribes that "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate federal agency within two years after such claim accrues...." *Id.* The plaintiff, Kubrick, filed suit in District Court contending that he suffered a loss of hearing as the result of having an infected leg treated with neomycin (an antibiotic) at the Veteran's Administration in 1968. Kubrick did not initiate his lawsuit until 1971 claiming that prior to that time he had no reason to connect the loss of hearing to the treatment he received at the VA hospital.[3] The District Court found in favor of Kubrick, rejecting the government's argument that the claim was barred by the two year statute of limitation because it had occurred in January 1969 when Kubrick learned from his private physician (Dr. Sataloff) that his injury probably resulted from the neomycin treatment. *Id.* at 116, 100 S.Ct. at 356.[4] The Court of Appeals for the Third Circuit affirmed the lower court's decision, ruling that even though a plaintiff may be aware of an injury and the

defendant's responsibility for it, the statute of limitation does not commence until the plaintiff knows or in the exercise of due diligence should have known that the medical treatment was improper. *Id.*

The Supreme Court reversed, holding that a claim accrues under the FTCA when a claimant knows of both the existence and cause in fact of injury, regardless of whether he is aware of a possible malpractice claim. 444 U.S. at 122–23, 100 S.Ct. at 359–60.[5]

The Court in *Kubrick* narrowly interpreted the discovery rule to require only knowledge of injury and probable cause. The analysis engaged in by the Court was specifically geared to bring the rule within the limited context of the FTCA. The Court's holding was based generally on two factors: congressional intent and stale claims litigation. The Court stated that its narrow analysis of the discovery rule made in light of the fact that the FTCA constituted a waiver of sovereign immunity, and its statute of limitation a condition of that waiver. The Court's construction of congressional intent was based upon the prem-

**3.** *Kubrick, supra,* 444 U.S. at 113–14, 100 S.Ct. at 354–55. In January 1969, Kubrick was informed by a private physician (Dr. Sataloff) that it was highly possible that the hearing loss was a result of the neomycin treatment. Upon receiving this information, Kubrick applied for disability benefits alleging that the neomycin treatment had caused his deafness. *Id.* at 114, 100 S.Ct. at 355. However, the Veteran's Administration denied the claim, reasoning that there was no causal nexus between the neomycin treatment and the loss of hearing and "that there was no evidence of 'carelessness, accident, negligence, lack of proper skill, error in judgment or other fault on the part of the Government.'" *Id.*

Thereafter, during the course of pursuing an administrative appeal, Kubrick was informed by the VA that the attending physician who had administered the neomycin treatment (Dr. Suma) believed that Kubrick's deafness might have been related to his prior occupation and told Kubrick that his injury had been caused by the inappropriate administration of neomycin. Despite this admission, the VA Board of Appeals denied Kubrick benefits reasoning that the neomycin treatment was not administered "in accordance with acceptable medical practices and procedures," and, therefore, the government

was not obligated to compensate Kubrick for his injury. *Id.* at 115, 100 S.Ct. at 355.

**4.** The District Court acknowledged the consistent holdings of lower federal courts that a claim does not accrue within the context of the Act until "the claimant has discovered, or in the exercise of reasonable diligence should have discovered the acts constituting the alleged malpractice," 435 F.Supp. 166, 180 (E.D.Pa.1977). The court concluded that although knowledge of injury and its cause are normally sufficient to trigger the limitations period, "a plaintiff could avoid the usual rule by showing that he had exercised reasonable diligence and has no 'reasonable suspicion' that there was negligence in his treatment." *Kubrick, supra,* 444 U.S. at 115–16, 100 S.Ct. at 355–56, (quoting 435 F.Supp. at 185.) The District Court found that Kubrick had no reason to suspect that any legal duty to him had been breached until his conversation with Dr. Soma in June 1971, less than two years prior to presentation of his tort claim. 444 U.S. at 116, 100 S.Ct. at 356.

**5.** Thus, the Court held that Kubrick's claim was barred by the two-year statute of limitations as it arose in January 1969 when he became aware of his injury and its probable cause in fact. *Id.*

ise that Congress intended the prompt presentation of such claims by implementing a two-year limitations period in return for the waiver of sovereign immunity. *Id.* at 117, 100 S.Ct. at 356.[6]

## II (B)

As previously stated, other states which have considered the discovery rule on facts comparable to ours have concluded that at least some knowledge of "wrongdoing" (i.e., actionable harm), on the part of a defendant is necessary to commence the running of the statute of limitation in a negligence action. These cases are instructive as they further bolster the validity of our acknowledgment that the discovery rule requires knowledge of some evidence of wrongdoing. These cases point out that statutes of limitations are based on the proposition that persons who sleep on their right to commence a cause of action may lose that right after a specified period of time. Thus, a statute of limitations can effectively deprive a person of the opportunity to pursue what may be an otherwise valid claim. In the area of medical malpractice, an individual, more often than not, lacks the requisite expertise to know whether the ill effects of a particular medical treatment resulted from someone's wrongdoing, rather than merely an inevitable or unforeseeable risk of treatment. Because the discovery rule is designed to prevent the accrual of a cause of action before an individual can reasonably be expected to discover that he has a basis for legal redress, the statute should not commence until a claimant knows, or through the exercise of due diligence, should know, that his injury resulted from someone's wrongdoing.

The North Dakota Supreme Court adopted the discovery rule in *Iverson v. Lancaster*, 158 N.W.2d 507 (N.D.1968),[7] and later, in *Anderson v. Shook*, 333 N.W.2d 708 (N.D.1983), refined its rule to specifically reject the rationale of *Kubrick*. *Iverson* involved a suit brought against a physician claiming that a hysterectomy was negligently and unnecessarily performed upon her. The action was commenced more than two years after the hysterectomy was performed, but less than two years after a diagnosis which revealed that the hysterectomy was not necessary.[8] On appeal, the court held that the statute of limitation did not begin to run until the plaintiff's condition was correctly diagnosed because that is when she could have discovered that the hysterectomy was unnecessary. That is, the limitation period commences to run against a malpractice action from the time the act of malpractice with resulting injury is, or by reasonable diligence could be, discovered." *Id.* at 510. The court rationalized such an interpretation of the discovery rule as follows:

The objective of a statutory limitation on the time within which an action may be brought is, in malpractice cases, the protection of medical practitioners from the assertion of stale claims. We do not believe the legislature intended to limit patients asserting malpractice claims, who by the very nature of the treatment had no way of immediately ascertaining their injury, to the same overall period of time that is allowed for bringing other

---

6. *See generally* Muscara, *Tort Law—Federal Tort Claims Act—Accrual of Medical Malpractice Action—United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), 4 W.N.E.L.Rev. 155, 160–64.

7. At the time *Iverson* was decided, the North Dakota statute of limitations provided, "the following actions must be commenced within two years after the cause of action has accrued ... (3) An action for the recovery of damages resulting from malpractice...." N.D.Cent.Code § 28–01–18 (1974).

8. The defendant-physician treated plaintiff for high blood pressure from 1957–1962. Dr. Lancaster advised Mrs. Inverson that because of her high blood pressure she should not become pregnant. In February 1959, Mrs. Iverson underwent a hysterectomy. In 1962, Dr. Lancaster correctly diagnosed Mrs. Iverson's condition as coarctation of the aorta and recommended corrective surgery, which eliminated the high blood pressure.

tort actions that are normally immediately ascertainable upon commission of the wrong. The protection of the medical profession from stale claims does not require such a harsh rule. The mischief the statute was intended to remedy was delay in the assertion of a legal right by one who had slumbered for the statutory period during which process was within his reach.

*Id.* at 511 (quoting *Berry v. Branner*, 245 Or. 307, 421 P.2d 996, 998–99. (1966)).

In 1983, the North Dakota Supreme Court construed the discovery rule further to clearly define the degree of knowledge necessary to show discovery of a cause of action for medical malpractice. *Anderson v. Shook*, 333 N.W.2d 708 (N.D.1983), involved an appeal from an order granting dismissal of a medical malpractice action based upon the running of the statute of limitations. The facts were these. In 1975, Dr. Lester D. Shook treated Louise Anderson with radiation therapy for cancer of the uterus. In July 1976 Anderson knew she had been permanently injured as a result of the radiation therapy administered by defendant-doctor.[9] In September 1981 Anderson brought a negligence action against Dr. Shook. On appeal from the trial court's holding that the statute of limitation barred the claim, the court held that such an action does not accrue until the plaintiff "knows, or with reasonable diligence should know, of her injury, its cause, and the defendant's possible negligence...." *Id.* at 712.

In interpreting the discovery rule to require knowledge of "possible negligence," the North Dakota Supreme Court, as previously stated specifically rejected *Kubrick.*

After reviewing the *Kubrick* decision, the *Anderson* court examined other jurisdictions that have rejected the *Kubrick* holding. The *Anderson* court began its analysis by noting that "[c]ourts in the District of Columbia and Hawaii have specifically rejected the *Kubrick* position." *Id.* at 710.[10] The *Anderson* court recognized that the policy of a statute of limitations is to discourage unfounded claims; however, it concluded that the *Kubrick* position, contrary to public policy, would "encourage[ ] any person who has an injury to file a lawsuit against a physician or hospital to prevent the statute of limitation from running. This is contrary to the policy that unfounded claims should be strongly discouraged." *Id.* The *Anderson* rationale was later reiterated by the court in *Phillips Fur and Wool Co. v. Bailey*, 340 N.W.2d 448 (N.D.1983), where the court concluded that, in all malpractice claims, the "time starts running when plaintiff knows, or with reasonable diligence should know, (1) of the injury, (2) its cause, and (3) defendant's possible negligence." *Id.* at 449.

Hawaii's rejection of the *Kubrick* position occurred in *Jacoby v. Kaiser Foundation Hospital*, 1 Hawaii App. 519, 622 P.2d 613 (1981). The *Jacoby* court concluded that the two-year statute of limitations commences to run in medical malpractice actions "when plaintiff discovers, or through the use of reasonable diligence should have discovered, (1) the damage; (2) the violation of the duty; and (3) the causal connection between the violation of the duty and the damage." *Id.* 622 P.2d, at 617.[11] The *Jacoby* court rejected Justice

---

**9.** The parties agreed that Anderson knew of the existence of her injury and knew that it had resulted from the radiation therapy of July 1976. *Id.* at 709.

**10.** *See Dawson v. Eli Lilly & Co.*, 543 F.Supp. 1330 (D.D.C.1982) (discussed, *supra*, at 428); *Jacoby v. Kaiser Foundation Hospital*, 1 Hawaii App. 519, 622 P.2d 613 (1981) (discussed *infra* at 431–32).

**11.** The *Jacoby* decision seems to require knowledge of *all* the elements of a particular negligence cause of action to begin the statute of limitation running. Although cases in the District of Columbia have interpreted the discovery rule to require only knowledge of "some" wrongdoing, *see Burns v. Bell, supra*, 409 A.2d at 615; *Dawson v. Eli Lilly and Co., supra, Jacoby* nonetheless, is instructive for its analysis and conclusions to support a requirement of *at least some* knowledge of wrongdoing to commence

White's concern expressed in *Kubrick* that negligence suits could be brought at any time and run rampant if an interpretation of the discovery rule required knowledge of wrongdoing to commence the limitation period in such actions. The *Jacoby* court rationalized that " 'through the use of reasonable diligence should have discovered' language in our statute adequately covers and includes the duty of reasonably diligent inquiry which Justice White talked about in *Kubrick.*" *Id.*

The Supreme Court of New Jersey, in a case arising after the United States Supreme Court's decision in *Kubrick,* concluded that "a cause of action will not be held to accrue until the injured party discovers ... that he may have a basis for an actionable claim ... [or] knows or has reasons to know that he has a right of redress." *Lynch v. Rubacky,* 85 N.J. 65, 424 A.2d 1169, 1171 (1981) (quoting *Lopez v. Swyer,* 62 N.J. 267, 272, 300 A.2d 563 (1973)). In *Lynch,* the plaintiff was ignorant of the true condition of her injured ankle. She relied totally on the expertise of her physician who continually assured her that the pain and swelling were part of the healing process. When the physician told plaintiff there was nothing wrong with her physically and that she needed to consult a psychiatrist, plaintiff sought another medical opinion. The second physician did not arouse plaintiff's suspicions of past malpractice until several months after her first consultation. Hence, a lawsuit was not instituted against the first physician until well after the two-year negligence statute of limitations had expired.

The court noted that in such cases, the discovery rule must be applied to determine when the statute of limitation upon a cause of action commences. The court construed the discovery rule to defer accrual of a claim until a person knows he has suffered an actionable harm, reasoning that "it would be inequitable to deny an injured person the opportunity to press a claim when she was unaware that her injury was occasioned by the fault of another." *Id.,* 424 A.2d at 1172 (footnote omitted). Furthermore, the court stressed the need to defer the accrual of a cause of action where a lay person relies upon a physician's expertise:

> A patient frequently is ignorant of her true medical and physiological condition and must repose trust and confidence in the doctor. Understandably, there is a normal reluctance on the part of a patient to suspect malpractice or impute medical fault to her physician....
>
> ... Moreover, as in this case, a doctor's repeated assurance of progress may reinforce the reluctance of an average patient to find medical fault.

*Id.* at 1173–74 (citations omitted).[12]

The Michigan Court of Appeals has held that for an action to accrue, a person must discover "the act or omission itself ... and have good reason to believe the act itself was improper or was done in an improper manner." *Leary v. Rupp,* 89 Mich.App. 145, 149, 280 N.W.2d 466, 468 (1979).[13] The court reasoned that "knowledge of the act and resulting injury alone [following treatment by a physician] may be insuffi-

---

the statute of limitation period in negligence actions. For other cases requiring knowledge of all elements of the cause of action to commence the statute of limitation, *see infra* at 433–35.

**12.** As Justice Robert Braucher, speaking for the Supreme Judicial Court of Massachusetts said: "The client is not an expert; he cannot be expected to recognize professional negligence if he sees it, and should not be expected to watch over the professional or to retain a second professional to do so." *Hendrickson v. Sears, supra,* 310 N.E.2d at 135.

**13.** In *Leary,* the patient developed an allergic reaction from the drugs prescribed by defendant. The patient knew the allergic reaction was caused by the drugs. The court stated that "while the plaintiff knew of some of the acts, i.e., the prescribing of polycillin and prednisone, and the resulting harm, allergic reaction and pain in the legs, reasonable minds could differ as to when she should have realized that the doctor had acted improperly." 89 Mich. App. at 149–50, 280 N.W.2d at 468.

cient to commence the running of the statute of limitation" because often the physician may "allay any suspicions the patient might have." *Id.*

In *Brown v. Mary Hitchcock Memorial Hospital*, 117 N.H. 739, 378 A.2d 1138 (1977), the New Hampshire Supreme Court determined that under the discovery rule a cause of action for medical malpractice does not accrue "until the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he has been injured but also that his injury may have been caused by the defendant's wrongful conduct." *Id.*, 378 A.2d at 1140 (emphasis in original). The court rationalized the requirement of knowledge of some wrongdoing by stating that any other interpretation of the discovery rule "would bar a negligently injured party's cause of action before he has had even a reasonable opportunity to discover that it exists." *Id.*

Courts in Utah and Oregon are in accord. The Utah Supreme Court determined that Utah's statute of limitations begins to run "when an injured person knows or should know that he has suffered a legal injury." *Foil v. Ballinger*, 601 P.2d 144, 147 (Utah 1979). The court reasoned:

> In the health care field it is typically the case that there often is a greater disparity in the knowledge of those who provide health care services and those who receive the services with respect to expected and unexpected side effects of a given procedure, as well as the nature, degree, and extent of expected after effects. While the recipient may be aware of a disability or dysfunction, there may be, to the untutored understanding of the average layman, no apparent connection between the treatment provided by a physician and the injury suffered. Even if there is, it may be passed off as an unavoidable side effect or a side effect that will pass with time.

*Id.* The Utah court concluded that "when injuries are suffered that have been caused by an unknown act of negligence by an expert, the law ought not to be construed to destroy a right of action before a person even becomes aware of the existence of that right." *Id.*

In Oregon, the appellate court likewise concluded that a "plaintiff should discover that he has a cause of action when he realizes (1) that he has been injured; (2) that the injury can be attributed to an act of the alleged tortfeasor, and (3) that the act of the alleged tortfeasor was somehow negligent." *Hoffman v. Rockey*, 55 Or. App. 658, 663, 639 P.2d 1284, 1286 (1982). The Oregon court rationalized such a construction of the discovery rule by noting:

> The cause of action must necessarily accrue to some person or legal entity. To say that a cause of action accrues to a person when she may maintain an action thereon and, at the same time, that it accrues before she has or can reasonably be expected to have knowledge of any *wrong* inflicted upon her is patently inconsistent and unrealistic. She cannot maintain an action before she knows she had one. To say to one who has been wronged, "you had a remedy, but before the wrong was ascertainable to you, the law stripped you of your remedy," makes a mockery of the law. * * *

639 P.2d at 1286 (quoting *Berry v. Branner*, 245 Or. 307, 312, 421 P.2d 996, 998 (1966) (emphasis added)).

Several jurisdictions have gone so far as to hold that a medical malpractice cause of action does not accrue until a claimant has had a reasonable opportunity to discover *all* of the essential elements of a possible cause of action. Although this is not the position of this court, these cases are demonstrative of the soundness of a less stringent rule, such as that applied in *Burns*, requiring at least knowledge, actual or constructive, of some wrongdoing to begin running the limitation period.

For example, Maryland, which we often look to in the analysis of issues before this court, has adopted an interpretation of the discovery rule requiring knowledge of wrongdoing. In *Waldman v. Rohrbaugh*, 241 Md. 137, 215 A.2d 825 (1966), the Court

of Appeals concluded that "the right of action for injury or damage from malpractice may accrue when the patient knows or should know he has suffered injury or damage." 215 A.2d at 830. The court reasoned that although in some cases a person will know at the time of the act that he has been the victim of negligent medical care, often it may be impossible for him, "as a lay [person] unskilled in medicine, reasonably to understand or appreciate that actionable harm has been done to him." *Id.* Thus, the court concluded that justice requires in such situations that a claimant have the statutory time from the moment of discovery that an actionable injury has been suffered to file suit.

Likewise, in *Ohler v. Tacoma General Hospital*, 92 Wash.2d 507, 598 P.2d 1358 (1979) (en banc), the Washington Supreme Court determined that the plaintiff's medical malpractice claim "did not accrue until she discovered or reasonably should have discovered all of the essential elements of her possible cause of action, i.e., duty, breach, causation, and damages. 92 Wash.2d at 511, 598 P.2d at 1360." [14] The *Ohler* court summarized that "[t]he trial court erred as a matter of law when it ruled that appellant's cause of action accrued when she (discovered) the cause of her blindness (too much oxygen), even if no fault on the tort feasor's part was apparent." *Id.* The court stressed that knowledge of the essential elements of a cause of action are necessary for an action to accrue. Although a patient-plaintiff may have knowledge of the act and of the injurious result, "there is a factual issue whether she knew or should have known that the result was a breach of the hospital's duty." *Id.*

In *Owens v. Brochner*, 172 Colo. 525, 474 P.2d 603, 607 (1970), the Supreme Court of Colorado held that where a defendant-physician has concealed his negligence, "the cause of action does not accrue until the patient discovers the negligence, or by the exercise of reasonable diligence should have discovered it." 474 P.2d at 605. The Colorado court emphasized that there are many reasons for requiring knowledge of negligence to commence a cause of action. First, the injustice of barring a plaintiff's action before he could reasonably have been aware that he had a claim:

> In many cases he will or should know at the time of or soon after the wrongful act that he has been the victim of negligent medical care; in other settings of fact it may be impossible for him, as a layman, unskilled in medicine, reasonably to understand or appreciate that actionable harm has been done him. If this is fairly the fact, we think he should have the statutory time from the moment of discovery, the moment he knows or should know he has a cause of action, within which to sue.

474 P.2d at 606 (quoting *Waldman v. Rohrbaugh, supra*). Second, the inequity to be suffered by the patient if disallowed to bring a suit, far outweighs that which would be occasioned by the defendant-physician. *Id.*

In *Abernethy v. Smith*, 17 Ariz.App. 363, 498 P.2d 175 (1972), the Arizona Court of Appeals determined that under its laws a cause of action for medical malpractice accrues when the claimant "discovers or through the use of reasonable diligence should have discovered the malpractice...." 498 P.2d at 179. The facts of *Abernethy* are compatible to ours as far as the reliance which a lay-person places on the expertise of his treating physician and

---

**14.** Plaintiff was born prematurely and placed in an incubator. She was administered "too much oxygen" which caused her loss of sight (retrolental fibroplasia). Plaintiff knew that her blindness was caused from too much oxygen but always believed that the oxygen had been administered properly and was necessary for her treatment as a premature baby. *Id.* 92

Wash.2d at 508–09, 598 P.2d at 1359. The court found it was a question of fact whether plaintiff knew or should have known that the result was a breach of the hospital's duty by giving oxygen which was unnecessary at all, or if necessary, not in metered amounts. 92 Wash.2d at 510–11, 598 P.2d at 1360.

later discovery of wrongdoing after consultation with other physicians. The court pointed out the reasonableness, in such cases, of deferring the accrual of a cause of action until the time when the lay person-patient becomes or should have become knowledgeable of the treating physician's wrongful conduct. *Id.*[15]

In Pennsylvania, the discovery rule was announced by the Supreme Court in *Ayers v. Morgan, supra,* 397 Pa. 282, 154 A.2d 788. *Ayers* involved a sponge left in a patient during an operation in 1948. The sponge was discovered as a result of further medical tests in 1957. Suit was filed within the two-year limitation period thereafter. The trial court ruled that the suit was time barred since it was not filed within the time limitation after 1948. The Supreme Court reversed, adopting the discovery rule; it held that a cause of action accrues pursuant thereto when a patient knows of the injury and its cause in fact. Subsequent decisions of the intermediate appellate court in Pennsylvania have adhered to the 1959 decision in *Ayers. See, e.g., Petri v. Smith,* 307 Pa.Super. 261, 453 A.2d 342 (1982) (defining the rule as requiring "(1) knowledge of the injury; (2) knowledge of the operative cause of the injury; and (3) knowledge of the causative relationship between the injury and the operative

conduct." *Id.,* 453 A.2d at 346 (quoting *Anthony v. Koppers Co., Inc.,* 284 Pa.Super. 81, 96–97, 425 A.2d 428, 436, *reversed on other grounds,* 496 Pa. 119, 436 A.2d 181 (1981)). *See also Held v. Neft,* 352 Pa.Super. 195, 507 A.2d 839 (1986); *De Martino v. Albert Einstein Medical Center, N.D.,* 313 Pa.Super. 492, 460 A.2d 295 (1983). However, we can find no case where the Supreme Court of Pennsylvania has confronted facts comparable to the ones facing us (and those involved in the state court cases analyzed above; i.e., where the injury and its cause in fact do not scream out "medical malpractice") since its 1959 decision in *Ayers.*

### III

In sum, we make precise and explicit what was perhaps imprecise but plainly implicit in *Burns* and subsequent cases. We reject the "cause in fact" rule and adhere to the following rule: for a cause of action to accrue where the discovery rule is applicable, one must know or by the exercise of reasonable diligence should know (1) of the injury, (2) its cause in fact, and (3) of some evidence of wrongdoing. We do so for the reasons set forth in section II above.

We further decline to follow *Kubrick* for an additional reason.[16] The majority in

---

**15.** For several other jurisdictions where knowledge of *all* the essential elements of the cause of action, or at least knowledge of some degree of wrongdoing, is required to cause the accrual of a negligence claim, *see, e.g., Knox College v. Celotex Corp.,* 88 Ill.2d 407, 58 Ill.Dec. 725, 430 N.E.2d 976 (1981) (question of fact for jury as to whether claimant knew or should have known injury was wrongfully caused, to begin the limitation period); *Nolan v. Johns-Manville Asbestos,* 85 Ill.2d 161, 52 Ill.Dec. 1, 421 N.E.2d 864 (1981) (statute begins to run where plaintiff knows or reasonably should have known that injury was caused by the wrongful act of another); *Harrison v. Seltzer,* 165 W.Va. 366, 268 S.E.2d 312, 314 (1980) ("[O]ur discovery rule ... [rests on a showing of] whether the injured plaintiff was aware of the malpractice or, by the exercise of reasonable care, should have discovered it", 268 S.E.2d at 314); *Baines v. Blenderman,* 223 N.W.2d 199 (Ia.1974) (whether plaintiff knew or should have known of sufficient facts to be aware he had a cause of action);

*Hecht v. First National Bank,* 208 Kan. 84, 490 P.2d 649 (1971) (whether claimant knew or reasonably should have known of defendant's alleged negligence); *Renner v. Edwards,* 93 Idaho 836, 839, 475 P.2d 530, 533 (1969) (statute of limitations tolls when plaintiff knew or should have known of defendant's negligence).

**16.** We reject Georgetown's contention that we have already adopted *Kubrick.* Georgetown points to *Kelton v. District of Columbia, supra,* 413 A.2d at 921 n. 4. In *Kelton,* we pointed out that Kelton was informed that there was scarring on her fallopian tubes which indicated either a tubular ligation (to which she contended she had not consented) or surgical trauma, i.e., the injury and its cause in fact cried out evidence of wrongdoing. We declined to expand *Burns* to adopt the rule of *Bridgford v. United States,* 550 F.2d 978, 981–82 (4th Cir.1977), which held that the cause of action does not accrue until the plaintiff has knowledge, actual

*Kubrick* held that it was merely effectuating congressional intent in adopting the cause in fact rule; it found that intent, in part, from the waiver of sovereign immunity. We can find no expression of legislative intent to assist us in construing when a cause of action accrues for purposes of our statute of limitations. As the cases set forth in II B above indicate, the question is one for judicial resolution, absent legislative limitation.

If there is a perceived need in this jurisdiction to set a determined outer time limit to the discovery rule, the proper way to do so is by a statute of repose as has been adopted in many states. *See, e.g.,* the Hawaii statute, H.R.S. § 657-7.3 (the time within which the action may be instituted is six years after the event or two years after discovery, whichever is sooner. *See also* D.C.Code § 12-310 (1981), a statute of repose; *Westerman v. Fireman's Fund,* 499 A.2d 116 (D.C.1985). We, of course, take no position on this question.

*Reversed and remanded for further proceedings.*

NEBEKER, Associate Judge, dissenting:

The majority concludes that in order for a claim to accrue under the "discovery rule," the claimant must know or by exercise of reasonable diligence should know of the injury, its cause in fact and have some knowledge of the wrongful conduct involved. Applying the foregoing test, the majority holds that appellant's claim is not time-barred by the statute of limitations and, therefore, the trial court's order granting summary judgment for appellee was erroneous. I view the majority opinion as an unfounded extension of this court's decision in *Burns v. Bell,* 409 A.2d 614 (D.C. 1979). I therefore dissent.

In *Burns,* the decision upon which the majority relies to support its broadening of the discovery rule, this court spoke strictly

in terms of "knowledge of injury" as being the essential discovery required in order for a claim to accrue and, consequently, for the statute of limitations to run. We specifically stated: "[I]n all medical malpractice actions, the cause of action accrues when the plaintiff knows or through the exercise of due diligence should have known of the *injury." Id.* at 617 (emphasis added). In my view, the majority has disregarded the plain meaning of the *Burns* language by inferring that more than mere knowledge of the injury is necessary before a claim can accrue. In *Burns,* this court did not set out implicitly to make accrual contingent upon the plaintiff's knowledge of actionable harm. Rather, *Burns* modified the "time of injury rule," *see Shehyn v. District of Columbia,* 392 A.2d 1008, 1013 (D.C.1978), by holding that the point at which an injury should reasonably have been discovered is largely a function of the circumstances of the particular case. Specifically, we held that in a medical malpractice case the tort-feasor's statements and actions, or lack thereof, may be considered when determining the point of time at which the plaintiff gained knowledge of the injury. *Burns, supra,* 409 A.2d at 617. Thus, if a patient were to receive repeated, uncontradicted assurances from his physician that a particular physical manifestation is characteristic during the post-surgery healing period and that this condition would improve, that patient may not reasonably be expected to know, while receiving those assurances, that the condition was, in fact, an injury. Similarly, if a person were to undergo continued treatment following surgery for a condition that developed as a result of the surgery, that individual may not reasonably be expected to have known that the post-surgical condition was actually an injury until after the follow-up treatment had run its course.

or constructive, of *all* the essential elements of a cause of action. In other words, we declined to adopt the rule adopted by the courts of such states as *Maryland, see Waldman v. Rohrbaugh,*

*supra,* Washington, *see Ohler v. Tacoma General Hospital, supra,* and the like. *See also* cases cited at note 15, *supra.*

I believe that *Burns* reflected this court's understanding that the question of whether a plaintiff had knowledge of his injury may depend upon the defendant's conduct even after manifestations of the injury were present. In other words, a defendant's conduct after the tortious act occurs may prevent the plaintiff from gaining knowledge of the injury and, thus, preclude the claim from accruing. *Burns* did not state, explicitly nor implicitly, that a plaintiff must be aware that the conduct causing the harm was wrongful or actionable in order for the claim to accrue.

The majority's effort to broaden the meaning of *Burns* beyond that which was intended is illustrated by this court's more recent decision in *Kelton v. District of Columbia*, 413 A.2d 919 (D.C.1980). In *Kelton*, we restated the discovery rule as announced in *Burns* and noted this court's unwillingness to expand it any further. 413 A.2d at 921 n. 4. More pointedly, in the same footnote, we quoted with approval *United States v. Kubrick*, 444 U.S. 111, 123, 100 S.Ct. 352, 360, 62 L.Ed.2d 259 (1979), noting the Supreme Court's adoption of "a *Burns*-type standard" and rejection of the "conclusion 'that Congress intended that 'accrual' of a claim must await awareness by the plaintiff that his injury was negligently inflicted....'" *Kelton, supra,* 413 A.2d at 921 n. 4.

In *Kubrick*, the Supreme Court modified the discovery rule by holding that a claim does not accrue until the plaintiff has discovered both his injury and its cause in fact. 444 U.S. at 122–24, 100 S.Ct. at 359–60. Because *Kubrick* was a medical malpractice case which arose under the Federal Tort Claims Act, 28 U.S.C. §§ 2674 *et seq.* (1982), the determination of when a claim accrues under the Act involved considerations of sovereign immunity—a factor obviously not of concern to this court. However, I believe the standards set forth in *Kubrick* are relevant ones for our consideration here, and I urge that accrual under the discovery rule occur at that point in time when the claimant has discovered both his injury and its cause in fact.

With knowledge of the fact of injury and its cause, the claimant of malpractice is on the same footing as any other person claiming negligence. I do not perceive an undue burden in putting the plaintiff on notice that diligence from that point is required in determining whether there has been, in addition, a legal wrong. Once a plaintiff discovers, or should have discovered through due diligence, his injury and who caused the injury, he must "determine within the period of limitations whether to sue or not...." *Kubrick, supra,* 444 U.S. at 124, 100 S.Ct. at 360. Thus, the previously expressed policy of this court, *see Burns v. Bell, supra,* that the discovery rule be utilized to alleviate the inequities of the time of the injury rule, is accomplished by putting the medical malpractice plaintiff on an equal footing with any other plaintiff claiming negligence.

Here, using both knowledge of injury and its cause as the sole determinants for ascertaining when a claim has accrued, it is apparent that appellant's claim accrued more than three years prior to the date the suit was filed. Viewing, as this court must, the record in the light most favorable to appellant, it clearly demonstrates knowledge of an injury as early as March 7, 1980. In appellant's letter of that date to the Dean of the Georgetown Dental School, she states that as a result of the student-dentist's "forceful" efforts to seat a number of crowns her gums had receded and were "irritated and inflamed." In addition, she stated that "all of the trauma" associated with the student-dentist's efforts had affected her nervous system. Further, she subsequently wrote on March 11 that she suffered from "irritation to the tissues surrounding the teeth, muscular nervous spasms of the body ... disruption of sleeping habits and recurrent headaches." These statements demonstrate knowledge of an injury. Furthermore, the statements indicate that appellant had made the connection between her injury and its cause.

Specifically, in the March 11 letter she complains that her symptoms are "directly related" to the treatment she received at Georgetown.

The fact that appellant did not then comprehend the full extent, exact nature or medical description of her injury does not matter, for the law of limitations requires only that she have "inquiry notice of the existence of a cause of action for personal injury." *Baker v. A.H. Robins Co.,* 613 F.Supp. 994, 996 (D.D.C.1985); *Caldwell v. A.H. Robins Co.,* 577 F.Supp. 796, 797–98 (D.C.Pa.), *aff'd,* 735 F.2d 1347 (3d Cir.1984), *cert. denied,* 469 U.S. 862, 105 S.Ct. 197, 83 L.Ed.2d 129 (1984). Once the putative plaintiff is on notice of some physically ascertainable harm, as appellant was here, she is in no different a position than the victim of more commonplace negligence. Both plaintiffs are similarly on notice that they must investigate and ascertain the nature and extent of their injury and resulting damages. More importantly, each must get to the court within the statutory period. To hold otherwise would have the effect of allowing the statute to start anew with the onset of each successive complication or development.

Appellant contends that throughout her treatment, she was consistently advised by Georgetown that her discomfort was the result of a 1977 injury and not the result of any dental work done at Georgetown. Therefore, the question arises whether appellant reasonably relied upon the representations of her treating physician, and if so, whether such reliance creates an issue of material fact as to when she discovered who caused her injury.

Similar to the inquiry as to when an injury was discovered, the determination as to when the cause of the injury was discovered may also take into account actions or statements of the defendant. Representations made by a defendant may prevent a plaintiff from learning of either the existence of an injury or its cause in fact. *See Burns v. Bell, supra,* 409 A.2d at 617 (statements by physician create question of

fact as to when plaintiff should have discovered her injury).

Unlike the claimant in *Burns,* appellant was not satisfied with the representations made to her by the treating physician. On several occasions following the crowning of her teeth, she visited private dentists who advised her to return to Georgetown for corrective treatment. Specifically, in appellant's "Chronology of Injury," which was attached to her March 11 letter to Georgetown University, appellant wrote that on December 28, 1979, she visited one Dr. Yuhaniak, who advised her to bring to Georgetown's attention the "unprofessional conduct" of the student-dentist. Yuhaniak further informed appellant that the crowns had been improperly placed. On May 5, 1980, appellant went to another private dentist because the gum area surrounding the crowned teeth was "still puffy." Further, appellant was advised sometime prior to May 8, 1980, that if there was a problem with the position of the number eight tooth, that it should not have been crowned.

It is true that, like the plaintiff in *Burns,* appellant has no medical expertise. However, appellant had the benefit of the considered opinions of no less than three private practitioners. The opinions expressed by these dentists gave appellant "an accurate way of knowing whether the assurances given her [by Georgetown] were reasonable." *Burns, supra,* 409 A.2d at 617.

It is clear from appellant's correspondence that she believed she had suffered an injury caused by Georgetown and that she sought out independent advice to confirm her opinion. Her opinion having been confirmed no later than May of 1980, she cannot now claim that she, like Burns, relied upon the assurances of the defendant. When appellant discovered her injury and its cause, the limitations period began to run. To hold otherwise would, I believe, allow a putative plaintiff in possession of all of the critical facts of injury and causation to toll the running of the statute by repeatedly returning to the source of the

treatment or advice for "assurances" that no injury has been caused.

The majority has chosen to broaden the rule of *Burns v. Bell.* I would agree with their adoption of knowledge of cause in fact as a finding required before a malpractice claim may accrue. I dissent from adopting the majority's additional requirement that a plaintiff have knowledge of the defendant's wrongful conduct in order for a claim to accrue. This latter requirement is neither implicit in the *Burns* holding, as the majority states, nor is it a prudent extension of our current test for determining when accrual occurs. Because, in my view, appellant had both knowledge of her injury and its cause more than three years before her claim was filed, I would affirm the trial court's finding that the statute of limitations had expired and that appellee was entitled to summary judgment.

My colleagues' expansion of *Burns v. Bell* is, in my view, an unwise step in the many steps state courts have taken to expand tort liability to a point of systemic injury to the national economy. I believe it a step inconsistent with *M.A.P. v. Ryan,* 285 A.2d 310 (D.C.1971), requiring us to adhere to *Burns.* It is also a decision of exceptional importance.